**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CENTRAL DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> vs. <br><br> JOHN DWAYNE GAGEN, <br><br> Defendant. | No. CR11-3028-MWB-2 <br><br> **REPORT AND RECOMMENDATION ON MOTION TO SUPPRESS** |

The defendant John Dwayne Gagen is charged in an indictment with conspiracy to distribute methamphetamine in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), 851, and 846. *See* Doc. No. 3. On February 16, 2012, Gagen filed a motion to suppress. Doc. No. 61. The plaintiff (the "government") resisted the motion. Doc. No. 64. The court scheduled an evidentiary hearing on the motion for February 27, 2012. The hearing commenced as scheduled, but was continued because of issues concerning the defendant's mental health.

On April 12, 2012, Gagen filed an "amended and substituted motion to suppress evidence." Doc. No. 98.[1] On April 23, 2012, the government filed a resistance. Doc. No. 103. On April 25, 2012, the court held a hearing on the motion. At the request of the court, counsel for Gagen clarified the issues he is raising in his suppression motion before evidence commenced. First, he is challenging statements his client made to Palo Alto Deputy Sheriff Eric Ring during an interview at the sheriff's office on January 6,

---

[1] Since the motion filed April 12, 2012 (Doc. No. 98) is both an "amended" and a "substituted" motion to suppress, the earlier filed motions to suppress (Doc. Nos. 61 & 95) filed by the defendant both should be termed by the Clerk.

2011. Second, he is challenging incriminating statements he made to Deputy Ring and drugs seized from his person after the stop of his vehicle on April 9, 2011.[2]

At the hearing, Gagen's state parole officer, Kristen Johnson, and Deputy Ring testified on behalf of the government. The defense called no witnesses. The matter is now fully submitted, and the undersigned issues this report and recommendation.

## *Background*

In October 2010, Gagan was arrested on state drug paraphernalia charges in Palo Alto County, Iowa. In connection with that arrest, Gagen gave a statement to Palo Alto Deputy Sheriff Eric Ring about his drug activities, which included purchasing and using drugs and sharing drugs with others. Ring and Gagen also discussed the possibility of Gagen becoming an informant, but no agreement was reached.

On January 6, 2011, Gagen visited his parole officer, Kristen Johnson, in the booking room at the Palo Alto County Sheriff's Office. Johnson had requested the meeting. Ring showed up during the meeting and asked Gagen if he would answer some questions about his drug activities. Ring told Gagen he did not have to talk to him, but Gagen agreed to be questioned. After about five or ten minutes, the discussions started to involve confidential information, so the parties moved to an unlocked conference room in a different location in the building, where Ring continued questioning Gagen about his drug activities. Gagen talked freely about his drug associates. He identified one of his sources as Ronald Walstrom, and he identified Steve Farris as someone to whom he had distributed drugs. The meeting lasted about two hours. Gagen was told several times throughout the interview that he did not have to answer any questions and that he was free

---

[2] In his motion to suppress, Gagen also argued that the installation of a global-positioning-system ("GPS") tracking device on his vehicle by law enforcement violated the Fourth Amendment, as held in *United States v. Jones*, 565 U.S. ___, 132 S. Ct. 945 (2012). At the suppression hearing, after reading the decision of Judge Bennett in *United States v. Amaya*, ___ F. Supp. 2d ___, No. CR11-4065-MWB, 2012 WL 1188456 (N.D. Iowa Apr. 10, 2012), counsel for Gagen abandoned this issue.

to leave, but he continued with the interview. After the meeting, Gagen was allowed to leave.

On March 26, 2011, officers placed a GPS tracking device on Gagen's vehicle while it was parked in a public parking lot. On April 9, 2011, the tracking device indicated that Gagen had made a short stop at the residence of Steve Farris, and then he traveled in a vehicle to the residence of Ronald Walstrom, where he had remained for about two hours. Gagen then left Walstrom's residence and traveled on back roads in the general direction of his house. In Ring's judgment, the route suggested that Gagen was attempting to avoid detection by law enforcement officers. Ring suspected that Gagen had picked up drugs at Walstrom's house and was transporting them in his vehicle.

Ring proceeded to stop Gagen's vehicle. He told Gagen to get out of the vehicle, and then told Gagen that he believed Gagen was in possession of methamphetamine. He asked Gagen to show him the drugs. Gagen did not respond to this request at first, but admitted that he had used methamphetamine earlier that day. A few minutes later, after Ring had repeatedly directed Gagen to produce the methamphetamine, Gagen took a quantity of methamphetamine out of his pocket and gave it to Ring. Gagen was handcuffed, placed under arrest, *Mirandized*, and then taken to the jail. While Gagen was being booked, Ring mentioned that the methamphetamine in Gagen's pocket appeared to be an eight-ball, and Gagen commented that he did not think it was that much.

*Discussion*

A. ***Defendant's Statements on January 6, 2011***

Gagen contends the statements he made to Kristen Johnson and Deputy Ring resulted from a custodial interrogation conducted without his first being advised of his *Miranda* rights. The government concedes Gagen was not given the *Miranda* warnings,

3

but argues that *Miranda* does not apply because Gagen was not in custody when he made the statements. The government further argues that Gagen's statements were voluntary.

### 1. *Custodial Interrogation*

Because Gagen was never advised of his *Miranda* rights, if his statements were the product of a custodial interrogation, they would have to be suppressed. *See, e.g.*, *Oregon v. Elstad*, 470 U.S. 298, 309, 105 S. Ct. 1285, 1293 (1985) (*Miranda* requires that an unwarned custodial admission be suppressed); *United States v. Vega-Rico*, 417 F.3d 976, 981 n.2 (8th Cir. 2005) (Bye, J., concurring) ("Unwarned questioning is . . . a violation of the *Miranda* warnings designed to protect Fifth Amendment rights."). On the other hand, if Gagen was not in custody when he made the statements, the statements should not be suppressed. Thus, the determinative question is whether Gagen was in custody when he made the statements.

A person is "in custody" when he is formally arrested or when his freedom of movement is restrained to a degree equivalent with formal arrest. *California v. Beheler*, 463 U.S. 1121, 1125, 103 S. Ct. 3517, 3520 (1983) (per curiam). "[W]hether a suspect is 'in custody' is an objective inquiry." *J.D.B. v. North Carolina*, 564 U.S. \_\_\_, 131 S. Ct. 2394, 2402 (2011). "Two discrete inquiries are essential to the determination: first, what were the circumstances surrounding the interrogation; and second, given those circumstances, would a reasonable person have felt he or she was at liberty to terminate the interrogation and leave." *Id.* (quoting *Thompson v. Keohane*, 516 U.S. 99, 112, 116 S. Ct. 457, 465 (1995)) (internal quotation marks omitted). "Once the scene is set and the players' lines and actions are reconstructed, the court must apply an objective test to resolve the ultimate inquiry: was there a formal arrest or restraint on freedom of movement of the degree associated with formal arrest." *Id.* (quoting same); *see also United States v. LeBrun*, 363 F.3d 715, 720 (8th Cir. 2004) (en banc). "Rather than demarcate a limited

set of relevant circumstances, we have required police officers and courts to examine all of the circumstances surrounding the interrogation, including any circumstance that would have affected how a reasonable person in the suspect's position would perceive his or her freedom to leave." *J.D.B.*, 131 S. Ct. at 2402 (internal citation and quotation marks omitted). "The test, in other words, involves no consideration of the 'actual mindset' of the particular suspect subjected to police questioning." *Id.*

In *United States v. Griffin*, 922 F.2d 1343, 1349 (8th Cir. 1990), the court identified six factors to consider in determining whether an individual is in custody for the purposes of *Miranda*:

> (1) whether the suspect was informed at the time of questioning that the questioning was voluntary, that the suspect was free to leave or request the officers to do so, or that the suspect was not considered under arrest; (2) whether the suspect possessed unrestrained freedom of movement during questioning; (3) whether the suspect initiated contact with authorities or voluntarily acquiesced to official requests to respond to questions; (4) whether strong arm tactics or deceptive stratagems were employed during questioning; (5) whether the atmosphere of the questioning was police dominated; or, (6) whether the suspect was placed under arrest at the termination of the questioning.

The first three factors tend to mitigate the existence of custody, while the last three tend to aggravate it. *United States v. Boslau*, 632 F.3d 422, 427 (8th Cir. 2011). "There is no requirement . . . that the *Griffin* analysis be followed ritualistically in every *Miranda* case." *United States v. Czichray*, 378 F.3d 822, 827 (8th Cir. 2004). "When the factors are invoked, it is important to recall that they are not by any means exclusive, and that 'custody' cannot be resolved merely by counting up the number of factors on each side of the balance and rendering a decision accordingly." *Id.* "The ultimate inquiry must always be whether the defendant was restrained as though he were under formal arrest." *Id.* at 828; *see also LeBrun*, 363 F.3d at 720. "The most obvious and effective means of demonstrating that a suspect has not been 'taken into custody or otherwise deprived

5

of . . . freedom of action,' is for the police to inform the suspect that an arrest is not being made and that the suspect may terminate the interview at will." *Griffin*, 922 F.2d at 1349 (alteration in original) (internal citation omitted) (quoting *Miranda*, 384 U.S. at 444, 86 S. Ct. at 1612).

After examining the totality of the circumstances in the present case, the court finds that Gagen was not in custody on January 6, 2011, when he was interviewed by Deputy Ring; therefore, the fact that *Miranda* warnings were not given before the interview does not bar its admissibility.

The first factor to be considered is whether the suspect was informed during the interview that the questioning was voluntary, that he could ask the officers to leave, or that he was not considered under arrest. *Griffin*, 922 F.2d at 1349. However, the touchstone of the court's inquiry remains whether Gagen was restrained as though he were under formal arrest, *see LeBrun*, 363 F.3d at 720, so whether Deputy Ring informed Gagen that he was free to leave and to refuse to answer questions is not dispositive. *See United States v. Flores-Sandoval*, 474 F.3d 1142, 1147 (8th Cir. 2007) (although defendant was not informed that he was free to leave, he had been released from jail and was free to leave, he voluntarily replied to the questions posed to him, and there was no evidence that defendant's responses were coerced through physical or verbal coercion; therefore, defendant was not in custody for *Miranda* purposes); *United States v. Wallace*, 323 F.3d 1109, 1111-14 (8th Cir. 2003) (defendant was not in custody for *Miranda* purposes even though she was told neither that she was free to leave nor that she did not have to participate in interviews with FBI); *see also Yarborough v. Alvarado*, 541 U.S. 652, 655-59, 663-65, 124 S. Ct. 2140, 2144-46, 2149-50 (2004) (where police initiated a two-hour interview of suspect in police station, did not tell suspect he was free to leave, and engaged in "pretty friendly conversation" during interview, state court was clearly "reasonable" in concluding that suspect was not in custody). Here, Deputy Ring advised the defendant

6

that he did not have to talk to him. "That a person is told repeatedly that he is free to terminate an interview is powerful evidence that a reasonable person would have understood that he was free to terminate the interview." *Czichray*, 378 F.3d at 826. This factor weighs in favor of finding that Gagen was not in custody.

The second *Griffin* factor looks to whether the suspect possessed unrestrained freedom of movement during the questioning. *Griffin*, 922 F.2d at 1349. Gagen was neither handcuffed nor physically restrained in any way during the interview, which supports a conclusion that he was not in custody. *See, e.g.*, *United States v. Muhlenbruch*, 634 F.3d 987, 995-97 (8th Cir. 2011); *United States v. Black Bear*, 422 F.3d 658, 662-63 (8th Cir. 2005); *United States v. Brown*, 990 F.2d 397, 400 (8th Cir. 1993).

The third factor identified in *Griffin* is whether the suspect voluntarily acquiesced to official questioning or initiated contact with authorities. "[W]hen the confrontation between the suspect and the criminal justice system is instigated at the direction of law enforcement authorities, rather than the suspect, custody is more likely to exist." *Griffin*, 922 F.2d at 1351. Here, Gagen visited his parole officer at her request, but was not previously advised that Ring would be at the interview. Nevertheless, after Deputy Ring advised Gagen of the reasons for the interview, he agreed to speak with the deputy. *Cf. United States v. Ollie*, 442 F.3d 1135, 1138 (8th Cir. 2006) (concluding that defendant neither initiated contact with police nor voluntarily acquiesced to questioning because defendant's parole officer ordered defendant to talk to police chief; "[w]hile a defendant does not need to be enthusiastic about an interview for us to conclude that he voluntarily acquiesced, we think it clear here that [the defendant] was responding to pressure"). *But see United States v. Mottl*, 946 F.2d 1366, 1370 (8th Cir. 1991) (FBI agent initiated contact with defendant by asking him to agree to questioning, "a factor which weighs in favor of finding custody under *Griffin*"). The court finds that, on balance, Gagen

7

voluntarily acquiesced to questioning and concludes that this factor also weighs in favor of a finding that the interview took place in a noncustodial setting.

The fourth *Griffin* factor requires the court to determine whether Ring employed strong arm tactics or deceptive stratagems during questioning. *Griffin*, 922 F.2d at 1349. Ring did not raise his voice or physically or verbally intimidate Gagen during the interview. *See, e.g.*, *Brown*, 990 F.2d at 400. There is no evidence in the record that Deputy Ring used any psychological ploys or deceptive stratagems during his interview with Gagen. *See id*. Gagen's interview with Deputy Ring lasted about two hours, demonstrating a lack of any strong arm tactics. *See United States v. Plumman*, 409 F.3d 919, 925 (8th Cir. 2005) (finding defendant not in custody although FBI interview "lasted a considerable period of time, an estimated three and one-half hours without intervening breaks"); *United States v. Helmel*, 769 F.2d 1306, 1320 (8th Cir. 1985) (finding that defendant's interview was noncustodial because "it does not appear that any strong arm tactics were used. The period of questioning lasted some forty-five minutes to two hours, certainly not a marathon session designed to overcome [the defendant's] will."). Accordingly, this factor also weighs in favor of a finding that Gagen was not in custody during the interview.

The fifth *Griffin* factor requires the court to determine "whether the atmosphere of the questioning was police dominated." *Griffin*, 922 F.2d at 1349. In making this determination, the court examines such factors as the length and place of the interview. *Brown*, 990 F.2d at 400. "*Miranda* warnings need not be imposed simply because the questioning takes place in a police station." *United States v. Galceran*, 301 F.3d 927, 931 (8th Cir. 2002) (per curiam) (citing *Oregon v. Mathiason*, 429 U.S. 492, 495, 97 S. Ct. 711, 714 (1977)). Rather, Gagen's voluntary agreement to meet at the sheriff's office, where Deputy Ring interviewed the defendant for two hours in a conference room, indicates a lack of police domination. *See id*. at 930-31 (finding that setting of defendant's

interview with police "was not police dominated, even though the interview took place at a police station. The interview was not held in the station's holding cell area normally used for custodial interrogations, [the defendant] voluntarily agreed to appear for questioning at the station, and the ninety-eight minute length of the interview does not indicate police domination."); *see also Wallace*, 323 F.3d at 1113 (questioning of defendant was not police dominated because it occurred at her workplace, "a location familiar to [the defendant] and a place where she would be comfortable and less threatened"); *Brown*, 990 F.2d at 400 (interview of defendant took place at a residence, where defendant could feel comfortable, as opposed to a police-operated facility, such as a jail); *United States v. Goudreau*, 854 F.2d 1097, 1098 (8th Cir. 1988) (interview held in building housing defendant police officer's chief of police and not in an FBI facility; therefore, defendant was not in custody during interview, and *Miranda* warnings were not required). Thus, Gagen's interview was not in a police-dominated atmosphere. Accordingly, this factor also weighs against a finding of custody.

The sixth and final *Griffin* factor is whether the suspect was arrested. *Griffin*, 922 F.2d at 1349. "Lack of arrest is a 'very important' factor weighing against custody." *Galceran*, 301 F.3d at 931. Unlike the defendant in *Griffin*, Gagen was not placed under arrest at any point during, or at the conclusion of, the interview. Rather, at the end of the interview, Gagen left the premises. The court finds that this factor also weighs in favor of a finding that the interview took place in a noncustodial setting.

Considering the totality of the circumstances, Gagen was not in custody during his interview with Deputy Ring. Therefore, the fact that *Miranda* warnings were not given does not bar the use of the interview at trial.

### 2. *Voluntariness*

The test for determining the voluntariness of a confession is whether the confession was extracted by threats, violence, or direct or implied promises such that the defendant's

9

will was overborne and his capacity for self-determination critically impaired. "A statement is involuntary when it was extracted by threats, violence, or express or implied promises sufficient to overbear the defendant's will and critically impair his capacity for self-determination." *United States v. Boslau*, 632 F.3d 422, 428-29 (8th Cir. 2011). The court discerns "whether a confession is voluntary under the totality of the circumstances, examining both the conduct of the officers and the characteristics of the accused." *Id.* The court considers, "among other things, the degree of police coercion, the length of the interrogation, its location, its continuity, and the defendant's maturity, education, physical condition, and mental condition." *Id.*

> The mere fact that an officer may have elicited a confession through a variety of tactics, including claiming not to believe a suspect's explanations, making false promises, playing on a suspect's emotions, using his respect for his family against him, deceiving the suspect, conveying sympathy, and even using raised voices, does not render a confession involuntary *unless the overall impact of the interrogation caused the defendant's will to be overborne*.

*Id.* at 428-29 (emphasis added). "The government bears the burden of persuasion and must prove by a preponderance of the evidence that the challenged statements were voluntary." *Id.* at 429.

As discussed above, Gagen was not in custody when he made his statements. Deputy Ring did not raise his voice or threaten Gagen. The interview was a one-on-one interaction between Deputy Ring and Gagen. *See United States v. Weiss*, No. 8:11CR206, 2011 WL 6026693, at *6 (D. Neb. Nov. 15, 2011). Furthermore, the interview did not occur in a police-dominated setting and lasted about two hours. *See Simmons v. Bowersox*, 235 F.3d 1124, 1133 (8th Cir. 2001) ("We do not find the period of interrogation in the present case—approximately two hours—to be particularly lengthy."); *accord United States v. Dehghani*, 550 F.3d 716, 721 (8th Cir. 2008) ("[T]he interrogation lasted approximately five and a half hours, which is not sufficient to render the confession involuntary per se.").

The court thus finds that Gagen's statements to Deputy Ring on January 6, 2011, were made voluntarily.

## B. *Deputy Ring's Stop of Defendant's Vehicle on April 9, 2011*

During the suppression hearing, counsel for the defendant clarified that he is not challenging the placement of the GPS tracking device on Gagen's vehicle in March 2011, nor is he challenging the stop of the defendant's vehicle on April 9, 2011. *See United States v. Walker*, 555 F.3d 716, 719 (8th Cir. 2009) (stop justified by reasonable suspicion). Instead, he is arguing that any statements he made after the stop and the methamphetamine seized from his person should be suppressed because he was effectively in custody after the stop and no *Miranda* warnings were given to him before he was questioned.

The United States Supreme Court long has recognized that custodial interrogations are inherently coercive. *See Dickerson v. United States*, 530 U.S. 428, 435, 120 S. Ct. 2326, 2331 (2000). As a result "*Miranda* imposed on the police an obligation to follow certain procedures in their dealings with the accused." *Moran v. Burbine*, 475 U.S. 412, 420, 106. S. Ct. 1135, 1140 (1986). Those procedures include fully apprising a suspect of his rights prior to any questioning. *Miranda*, 384 U.S. at 468-70, 86 S. Ct. at 1624-26. The *Miranda* Court defined "custodial interrogation" as "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Miranda*, 384 U.S. at 444, 86 S. Ct. at 1612.

The question here is whether Gagen was "in custody" after he was removed from his vehicle. "If a motorist who has been detained pursuant to a traffic stop thereafter is subjected to treatment that renders him 'in custody' for practical purposes, he will be entitled to the full panoply of protections prescribed by *Miranda*." *Berkemer v. McCarty*,

468 U.S. 420, 440, 104 S. Ct. 3138, 3150 (1984) (citing *Oregon v. Mathiason*, 429 U.S. 492, 495, 97 S. Ct. 711, 714 (1977) (per curiam)).

The question of whether a suspect has been taken into custody often is a difficult one. *Id*. The "determination of custody depends on the objective circumstances of the interrogation, not on the subjective views harbored by either the interrogating officers or the person being questioned." *Stansbury v. California*, 511 U.S. 318, 323, 114 S. Ct. 1526, 1529 (1994). Ultimately, the court must determine whether Gagen's freedom of movement was restrained to "the degree associated with a formal arrest." *Id*. at 322, 114 S. Ct. at 1529.

Here, Gagen's vehicle was stopped, he was ordered out of his vehicle, told by the deputy that the deputy believed he had drugs in his possession, and then he was ordered to turn the drugs over to the deputy. While the deputy obviously was exercising substantial control over Gagen, Gagen's freedom of movement was not restrained to a degree associated with a formal arrest until he was placed in handcuffs after the drugs were seized. Viewing these circumstances objectively, both Gagen and Ring would not reasonably have believed that Gagen was in custody until after he was placed in handcuffs. Therefore, any statements made by Gagen before the methamphetamine was seized should not be suppressed, but any statements he made after being placed in handcuffs but before being *Mirandized* should be suppressed.

Gagen's statement at the jail about the quantity of methamphetamine in his pocket at the time of the stop was a voluntary statement, and not the product of an interrogation. Therefore, this statement should not be suppressed.

*Recommendation*

For the reasons stated above, the undersigned RESPECTFULLY RECOMMENDS that Gagen's motion to suppress (Doc. No. 98) be **granted in part and denied in part**,

consistent with this Report and Recommendation. The Clerk is directed to terminate Doc. No. 61.

Objections to the Report and Recommendation in accordance with 28 U.S.C. § 636(b)(1) and Fed. R. Crim. P. 59(b) must be filed by **May 18, 2012**. Responses to objections must be filed by **May 25, 2012**. Objections must specify the parts of the Report and Recommendation to which objections are made, as well as the parts of the record forming the basis for the objections. *See* Fed. R. Crim. P. 59; Fed. R. Civ. P. 72. Failure to object to the Report and Recommendation waives the right to *de novo* review by the district court of any portion of the Report and Recommendation as well as the right to appeal from the findings of fact contained therein. *United States v. Wise*, 588 F.3d 531, 537 n.5 (8th Cir. 2009).

IMPORTANT NOTE: Any party planning to lodge an objection to this Report and Recommendation must order a transcript of the hearing promptly, but not later than **May 14, 2012, <u>regardless of whether the party believes a transcript is necessary to argue the objection</u>**. If an attorney files an objection without having ordered the transcript as required by this order, the court may impose sanctions on the attorney.

**IT IS SO ORDERED.**

**DATED** this 10th day of May, 2012.

*[signature: Paul A. Zoss]*

PAUL A. ZOSS
CHIEF MAGISTRATE JUDGE
UNITED STATES DISTRICT COURT